No. 32,918

MARSOL CREDIT COMPANY, *Appellee*, v. JAMES R. BLACKER and
GLEN D. COLE, doing business as THE BLACKER MILLING AND
GRAIN COMPANY, *Appellants*.

(62 P. 2d 914)

Opinion filed December 12, 1936.

*David F. Carson,* of Kansas City, *Charles M. Blackmar* and *Ralph M. Jones,*
both of Kansas City, Mo., for the appellants.

*C. W. Trickett,* of Kansas City, and *L. H. Solomon,* of New York, N. Y.,
for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on eleven promissory notes by an
alleged holder in due course. The trial court overruled a motion
of the defendants to dismiss the petition of plaintiff. Defendants
appeal from that ruling.

The petition alleged that plaintiff was a corporation organized
under the laws of New York, with its principal place of business in
New York City. It was organized for the purchase and sale of
commercial paper. Defendants, Blacker and Cole, were partners
doing business under the firm name of Blacker Milling and Grain
Company. The petition then alleged that defendants executed a
note for $280.35, payable to the Duralith Corporation, and before
maturity for value and in the course of business the note was en-
dorsed by the proper officers of the Duralith Corporation and de-
livered to plaintiff. There was a proper presentation for payment
and a refusal to pay. The allegations were the same for the eleven
causes of action.

The defendants answered first by denying that the signature of
the persons who were alleged to have endorsed the notes for the
Duralith Corporation were actually the signatures of these per-
sons, denying that these persons were actually the officers they
were alleged to be, denying that they were authorized to endorse

the name of the Duralith Corporation on the notes, and denying that plaintiff was really the holder in due course.

The answer then alleged that by fraud defendants were induced to enter into a contract with the Duralith Corporation for the purchase of a patented article known as "duralith." The answer then alleged these false and fraudulent representations, and that relying on these false representations defendants ordered $3,000 worth of "duralith," which was shipped to defendants, and that they gave in payment therefor certain trade acceptances; that the "duralith" was unfit for the purpose for which it was sold and subject to seizure by the federal authorities. The answer then contained the following allegation:

"That said Duralith Corporation went through the form of transferring said trade acceptance to the Marsol Credit Company, the plaintiff herein; that at the time said Marsol Credit Company went through the form of receiving said trade acceptances it well knew of the fraudulent acts of the Duralith Corporation, and knew that the consideration therefor had failed; that many other merchants in the United States had been induced to enter into similar contracts with the Duralith Corporation by fraud and deception, and the fraud practiced upon the defendants herein and upon other merchants similarly situated was well known to the Marsol Credit Company, and that the Marsol Credit Company lent itself to said fraudulent scheme, adopted the acts of said Duralith Corporation, and became a part thereby of a conspiracy to defraud the defendants; that said Marsol Credit Corporation has permitted itself to become the tool and dummy of said Duralith Corporation."

The answer then alleged that when the trade acceptances came due the defendants, still relying on the false representations alleged, entered into an agreement with the Marsol Credit Company, whereby that company would accept in lieu of the trade acceptance the notes of the defendants, and that while the Duralith Corporation is named as the payee in the notes, the Marsol company was in truth the payee therein.

The reply of the plaintiffs was a general denial.

It will be seen that with the pleadings as above set out the burden was on the defendants to establish that the Marsol Credit Company was not the holder of the notes in due course in order for the defense of fraud to be available to them. There were also some allegations of the petition which were denied by the answer which necessitated the taking of depositions in New York. Accordingly the plaintiff served notice of its intention to take depositions in New York. Soon thereafter the defendants served notice of their

intention to take depositions at the same time and place at the conclusion of the depositions to be taken by the plaintiff.

At the appointed time and place the plaintiff took the deposition of the treasurer and general manager of the Marsol Credit Corporation. His evidence on direct examination established a prima facie case in favor of the plaintiff.

On cross-examination in answer to questions by counsel for the defendants he testified that plaintiff was organized by and all its stock was owned by the Marsol Mortgage Corporation and the two companies had the same office; that it was organized at the suggestion of the president of the Duralith Corporation for the purpose of purchasing trade acceptances of the Duralith Corporation. The witness then testified as to various circumstances of intercorporate relationships of the Marsol Credit Corporation, the Marsol Mortgage Company and the Duralith Corporation, by which the defendants sought to prove that all three corporations were engaged in a scheme to defraud the public. The defendants were seeking to establish that on account of the relationship among the companies named the alleged sale of the trade acceptances to the Marsol company by the Duralith Corporation was not a bona fide transaction, and that plaintiff took the trade acceptances and the notes subject to all the defenses to which they would have been subject had action to collect them been brought by the Duralith Corporation.

At this point counsel for defendants attempted to get into the record the minute book, cash book, ledger, and other books of account of the plaintiff showing its transactions with the Duralith Corporation. The method of seeking to accomplish this was to demand that the counsel for plaintiff produce them. This demand was refused. Counsel for defendants then demanded of the witness the production of the books and records of the Marsol Mortgage Company. This demand was refused.

Subsequently defendants filed a motion in the case whereby they asked that the petition of plaintiffs be dismissed on account of the refusal of plaintiff to produce the books and records demanded. This motion was overruled. The appeal is from the order overruling that motion.

The motion was filed pursuant to the provisions of R. S. 60-2821. That section reads as follows:

"In any action now pending or hereafter instituted in any court of competent jurisdiction in this state, any party shall have the right to take the deposition of the adverse party, his agent or employee, and in case the adverse party

is a joint-stock association, corporation or copartnership, then of any officer, director, agent or employee of any such joint-stock association, corporation or copartnership, when such adverse party, or officer, director, agent or employee of such adverse party is without the jurisdiction of the court or cannot be reached by the process of the trial court; and in case said adverse party, when duly served with notice of the taking of such deposition, as provided by the code of civil procedure for the taking of depositions, shall fail to appear at the place fixed in said notice, which place shall be in the city or county of the usual place of residence or place of business of said witness, and testify and produce whatever books, papers and documents demanded by the party taking such deposition, or shall fail to produce at the time and place specified in such notice such officer, director, agent or employee, the court before whom such action is pending may, upon application of the party seeking to take such deposition, and upon notice to the adverse party of such application, and upon hearing had to the trial court, strike the pleadings of such adverse party from the files and render judgment in favor of the party so seeking to take such depositions, in whole or in part, as prayed for in his pleadings."

It will be noted that the above statute provides a remedy for a party who requires certain evidence from one who is beyond the reach of the usual processes of the court.

On account of the conclusion we have reached we will deal first with the question of whether overruling a motion to dismiss filed pursuant to the above statute is an appealable order. It goes without saying that the order from which the appeal was taken was not a final determination of the case.

In the case of *Edwards v. City of Neodesha*, 110 Kan. 492, 204 Pac. 708, this court held:

"The order denying the motion to dismiss is not appealable until the final determination of the action in the trial court."

In this opinion it was said:

"The ruling was not a final order as defined in section 566 of the civil code, nor was it an intermediate appealable order under any of the provisions of section 565 of the civil code." (p. 493.)

See, also, *Brown v. Kimble*, 5 Kan. 80; *Edinfield v. Barnhart*, 5 Kan. 225; *Simpson v. Kirschbaum*, 43 Kan. 36, 22 Pac. 1018.

In *Weigand v. Wilson*, 107 Kan. 445, 193 Pac. 1065, this court said:

"A final order is one affecting a substantial right in an action, when it in effect determines the action and prevents a judgment. . . . Of course, the mere refusal to dismiss . . . does not have either of these effects." (p. 446.)

In *Simpson v. Kirschbaum*, 43 Kan. 36, 22 Pac. 1018, this court held:

"Neither a motion to dismiss an action, nor a motion to dismiss an attachment, is reviewable until a final judgment has been rendered."

In *Brown v. Kimble,* supra, this court held:

"The denial of a motion to dismiss an action made by the defendant is not one of the orders of the district court from which error lies to this court until the final disposition of the action." (See, also, *Dolbee v. Hoover,* 8 Kan. 124.)

In *Snavely v. Buggy Co.,* 36 Kan. 106, 12 Pac. 522, this court said:

"An order of the district court overruling a motion to discharge an attachment is not reviewable in the supreme court until a final judgment has been rendered in the case." (Syl. ¶ 2.)

See, also, *Maynard v. Bank,* 105 Kan. 259, 182 Pac. 542.

A study of the above authorities has led us to the conclusion that the order from which the appeal was taken in this case was not appealable. The appeal is therefore dismissed.